Filed 4/17/13  P. v. Gutierrez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>BEATRICE GUTIERREZ,<br><br>　　Defendant and Appellant. | G046515<br><br>(Super. Ct. No. 09HF1539)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard F. Toohey, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　　\*　　　　\*

Defendant Beatrice Gutierrez and two others were charged with numerous crimes. The trial court severed defendant's case from that of her co-defendants and, after trial, a jury found her guilty of one count of attempted grand theft and two counts of grand theft, each based on a theory of theft by false pretenses, plus one count of grand theft from an elder. The jury also found the crimes resulted in losses exceeding $100,000. The court sentenced defendant to a five-year, eight-month prison term and ordered her to pay restitution. The sole issue on appeal is whether the trial court erred by admitting evidence defendant had previously acquired her elderly aunt's home, property used in the investment schemes underlying some of the charged crimes, by fraudulent means. (Evid. Code, §§ 1101 & 352; all further statutory references are to this code.) We find no error and affirm the judgment.

FACTS

*1. Count 1 – Attempted Grand Theft from Eric Fintzi*

In 2009, Eric Fintzi learned about an investment opportunity involving property in Buena Park located adjacent to a car dealership. The parcel was represented to be situated so as to make the dealership's acquisition of it necessary for expansion, consequently eliciting the interest of foreign developers. Fintzi successfully encouraged a former client to provide funds to release the property from bankruptcy.

After Fintzi's client failed to receive repayment, Fintzi investigated and discovered the bankruptcy case had been closed for five years. Other evidence established defendant and her husband had filed bankruptcy in the 1990's. Defendant's husband quitclaimed his interest in the Buena Park property in 2003 and defendant gave the lender a deed in lieu of foreclosure on the parcel in January 2004. The same month the bankruptcy proceeding was dismissed because the debtors were not complying with the requirements of their plan.

2

Concerned, Fintzi met with defendant who claimed she owned the property and that the sale to foreign developers would take place. She also requested more money to cover late payments, penalties, and interest from the bankruptcy proceeding. Fintzi offered to put up his own money but Eugene Lokhorst, a co-defendant, failed to come up with sufficient collateral. Fintzi later contacted the dealership and learned the entire transaction was false.

2. *Count 2 – Grand Theft from Oscar Vargas*

In 2007, defendant told Oscar Vargas she and another person named "Gene" had a business of loaning money secured by real property. Defendant said there was a property in Buena Park on which the owner owed money and if they could raise the funds they could acquire the property and then sell it to an interested foreign investor for a large profit. Vargas raised $135,000, consisting of his own savings plus money from family, friends, and members of his church. Defendant and Vargas even signed a notarized letter and partnership agreement. Despite promises of a 50 percent return on the investment, Vargas only received $16,000 in repayment.

3. *Count 3 – Grand Theft from Pamela Steinhoff*

In 2009, Pamela Steinhoff gave defendant $15,000 as part of a transaction where defendant promised to match this sum and loan the money to an investor for a short time after which Steinhoff would receive a large profit. To explain her work as an investor, defendant mentioned a house in Buena Park next to a car dealership she "had to take back from somebody" because the dealership wanted to acquire it. But as Steinhoff understood it, her investment did not involve that property. After defendant gave numerous excuses for the delay in repaying the loan, Steinhoff sued defendant. Steinhoff obtained a judgment, not a penny of which she has received.

3

*4. Count 4 – Grand Theft from an Elder; The Nickersons*

In 2009, Ben and Sheila Nickerson, defendant's elderly long-time neighbors, loaned her $8,000 for a real estate deal involving lots she owned in Buena Park. They never received repayment of their money. Although defendant gave several reasons for her delay in repaying the loan, and even attempted to do so on several occasions, the checks she provided them either bounced or were issued on a closed account. A proposal of giving the Nickersons title to a vehicle also fell through.

*5. Defendant's Acquisition of the Buena Park Property*

Over objection, Celedonia Lomeli, defendant's 78-year-old aunt, testified she and her husband owned a home on Arizona Street in Buena Park. In July 1992, Lomeli's husband died. She asked defendant to help maintain the property. Defendant claimed she had revelations from God, saying Lomeli had to put the property in defendant's name. In early August, despite the fact Lomeli's primary language was Spanish and she did not read or write in English, defendant presented her with papers written in English which she signed. Lomeli continued to pay the parcel's property taxes, but eventually left her home because defendant claimed God said she had to leave.

*6. The Defense*

The defense presented evidence of fraudulent transactions carried out by defendant's co-defendants, Lokhorst and Carole Newbill, in which she had no involvement. During closing argument, defense counsel argued defendant "was as much a victim" of Lokhorst's and Newbill's fraudulent schemes as the victims named in each of the counts.

DISCUSSION

Before Lomeli testified, the defense objected, arguing her testimony violated sections 1101 and 352.  The trial court overruled the objection, finding "the facts and circumstances regarding the property," including defendant's "knowledge of its ownership and how she came into possession of it and how that would relate to her own interaction with others regarding that property is certainly relevant to this proceeding." After Lomeli's testimony, defendant moved to strike it on the same grounds.  The trial court denied the motion, finding the testimony relevant to the issues of motive, opportunity, intent, preparation, plan, and knowledge, and that its "relevance outweighs [its] prejudicial impact . . . ."  Subsequently, the court concluded Lomeli's testimony was not relevant to "intent or motive" and amended CALCRIM No. 375 to limit the jury's consideration of this evidence to "whether . . . defendant knew of the property's title when she acted in this case or . . . [if] defendant had a plan or scheme to commit the offenses alleged in this case."

On appeal, defendant again argues the trial court erred in admitting Lomeli's testimony on defendant's acquisition of the Buena Park property.  She claims it was used to "establish that [she] had a 'propensity' for engaging in real estate fraud with respect to the subject property, or to otherwise prejudice" her and that its prejudicial effect outweighed its probative value.  We consider the admissibility of Lomeli's testimony to be a close question, but conclude the court did not err in admitting the evidence.

Section 1101, subdivision (a) provides that evidence of a person's character or character trait is "inadmissible when offered to prove his or her conduct on a specified occasion."  (*Ibid.*)  Notably, subdivision (b) of section 1101 states that nothing in this statute "prohibits the admission of evidence that a person committed a crime, civil wrong,

5

or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (§ 1101, subd. (b).)

In general, "'[t]he admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.' [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 22.)  On appeal, the trial court's determination as to the admissibility of evidence under section 1101 is reviewed for an abuse of discretion. (*People v. Kipp* (1998) 18 Cal.4th 349, 371)  A trial court abuses its discretion when "its ruling 'falls outside the bounds of reason.' [Citation.]" (*Ibid.*)

The materiality requirement was met by defendant entering a not guilty plea to the charges, thereby placing all elements of the crimes in dispute. (*People v. Lindberg, supra,* 45 Cal.4th at p. 23; *People v. Roldan* (2005) 35 Cal.4th 646, 705-706, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  Prior acts evidence is also material where the fact to be proved is "an intermediate fact from which a [disputed] ultimate fact can be inferred . . . . [Citation.]" (*People v. Gillard* (1997) 57 Cal.App.4th 136, 160; see also *People v. Tran* (2011) 51 Cal.4th 1040, 1048.)

As for the probative value of the uncharged conduct evidence, the court limited the jury's use of it to defendant's knowledge of the Buena Park property's title when she engaged in the acts underlying the charged crimes and to show a common plan or scheme for the charged crimes.  Where relevant to a disputed issue, evidence of prior acts may be admitted to prove a defendant's guilty knowledge. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 241; *People v. Moore* (2010) 187 Cal.App.4th 937, 942-943.)  But here, defendant's knowledge that she had once owned the Buena Park property and how she acquired it neither established an element of the charged crimes nor supported an inference from which a material fact could be inferred.  The issues at trial

6

concerned the state of the property's title and defendant's knowledge she no longer held an interest in it during the 2007 to 2009 time period when the charged crimes occurred.

Alternatively, the court admitted uncharged conduct evidence to show a common plan or scheme to commit the charged crimes. "[I]n establishing a common design or plan, evidence of uncharged misconduct must demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "'[T]he difference between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity.' [Citations.]" (*Id.* at pp. 402-403.)

While a close issue, we conclude the uncharged conduct evidence was admissible for this purpose. "[T]he common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*People v. Ewoldt, supra,* 7 Cal.4th at p. 403.) In both defendant's acquisition of the Buena Park property and three of the charged crimes the evidence showed defendant made false statements relating to the Buena Park parcel to obtain another's property. With Lomeli, defendant claimed God had said she should give defendant title to the property. On both the attempted theft from Fintzi and the theft from Vargas, defendant made false representations about the status of the Buena Park lot's title to convince the victims to give her money. On count 3, defendant also falsely suggested she held an ownership interest in the Buena Park property as a means of convincing Steinhoff to give her money.

But even where "evidence of prior conduct is sufficiently similar to the charged crimes to be relevant" for some permissible purpose, "the trial court then must

7

consider whether the probative value of the evidence 'is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." ([]§ 352.)' [Citation.]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.)  The trial court's ruling on this issue is also reviewed for abuse of discretion.  (*Ibid.*)

Lomeli was only one of over 20 witnesses who testified in a trial that lasted five days.  While her testimony concerned defendant's acquisition of the Buena Park property, not its use in real estate fraud schemes to take the victims' money, it was related to the charges in that it involved the same property and defendant's purported use of a false representation to obtain its title.  Defendant notes she acquired the Buena Park property 15 to 17 years before the charged crimes occurred and thus the uncharged conduct was too remote in time to have any probative value.  The length of time between a defendant's commission of that act and the charged crimes is relevant, but "[n]o specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.  [Citations.]" (*People v. Branch* (2001) 91 Cal.App.4th 274, 284; see also *People v. Steele* (2002) 27 Cal.4th 1230, 1245 [killings 17 years apart; no error in admitting prior homicide].)  Thus, "[t]he remoteness of evidence goes to its weight and not to its reliability.  [Citations.]" (*People v. Douglas* (1990) 50 Cal.3d 468, 511, disapproved on other grounds in *People v. Marshall* (1990) 50 Cal.3d 907, 932, fn. 4.)  The trial court did not abuse its discretion in rejecting defendant's claim her acquisition of the property's title was too remote.

On the question of undue prejudice "'[e]vidence is prejudicial . . . if it "'uniquely tends to evoke an emotional bias against a party as an individual'" [citation] or if it would cause the jury to ""'prejudg[e]" a person or cause on the basis of extraneous factors'" [citation].' [Citation.]" (*People v. Foster, supra,* 50 Cal.4th at p. 1331.) Lomeli was defendant's elderly aunt and she claimed defendant convinced her to give away her home only weeks after her husband died.  Clearly, this evidence presented some

8

potential for causing the jury to view defendant in an unfavorable light. Also defendant's uncharged conduct did not result in a criminal conviction, thus "increase[ing] the danger that the jury might have been inclined to punish defendant for the uncharged offense[], regardless whether it considered h[er] guilty of the charged offenses . . . ." (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 405.)

On the other hand, the potential for prejudice was ameliorated for a couple of reasons. While Lomeli's testimony was potentially inflammatory, it "was no stronger and no more inflammatory than the testimony concerning the charged offenses." (*People v. Ewoldt, supra,* 7 Cal.4th at p. 405; see also *People v. Foster, supra,* 50 Cal.4th at p. 1332 [claim prior acts "'highly inflammatory'" rejected because "they were less inflammatory than the evidence in the present case"].) The latter evidence included defendant's stealing money from her elderly neighbors, the Nickersons, and convincing Vargas to obtain money from others, including his family, friends, and fellow church members. The court's limiting instruction also told the jury to only consider Lomeli's testimony if it found by a preponderance of the evidence defendant fraudulently acquired her aunt's home and that it could "not conclude from this evidence . . . defendant has a bad character or is disposed to commit crime," "thereby 'minimizing the potential [the jury would use it] for [an] improper use.' [Citation.]" (*People v. Foster, supra,* 50 Cal.4th at p. 1332; *People v. Lindberg, supra,* 45 Cal.4th at p. 26 ["We presume the jury followed the[] instruction[]"].) Finally, contrary to defendant's argument the prosecutor's closing argument did not focus on the uncharged conduct. He only briefly mentioned Lomeli's testimony, telling the jury there was "no smoking gun" and asking them "to focus on . . . the totality of the evidence presented."

The trial court's exercise of its discretion in admitting evidence of uncharged acts "is entitled to deference on appeal. [Citation.]" (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1001.) Thus, while the use of Lomeli's testimony concerning defendant's acquisition of the Buena Park property to establish a common

9

plan or design presents a close call, we conclude the trial court did not abuse its discretion in admitting it for this purpose.  In light of this conclusion, the fact such evidence was not admissible on defendant's knowledge of the property's title does not change the result "because any error in the court's instruction was harmless.  [Citation.]" (*People v. Foster, supra,* 50 Cal.4th at p. 1333; see also *People v. Demetrulias* (2006) 39 Cal.4th 1, 18.)

DISPOSITION

The judgment is affirmed.

RYLAARSDAM, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

10