Filed 10/8/14 Unmodified version attached

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054475 |
| v. | (Super.Ct.No. RIF148873) |
| LARRY JASON BATCHELOR, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

The petition for rehearing filed by plaintiff and respondent is denied. It is ordered that the opinion filed herein on September 16, 2014, is modified as follows:

On page 21, line 5, the sentence which begins with the words "Perhaps the most straightforward way . . ." is modified to add the words "Under the unusual circumstances of this case" at the beginning of the sentence, so that the sentence reads as follows:

> "Under the unusual circumstances of this case, perhaps the most
> straightforward way to do so would have been to inform the jury of the
> results of the first trial, and to emphasize that its only task, left unresolved
> by the first trial, was to consider whether the elements of the single
> remaining offense had been proven beyond a reasonable doubt."

Except for the above modification, the opinion remains unchanged. There is no change in the judgment.

CERTIFIED FOR PUBLICATION.

HOLLENHORST
Acting P. J.

We concur:

MCKINSTER
     J.

CODRINGTON
     J.

2

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054475 |
| v. | (Super.Ct.No. RIF148873) |
| LARRY JASON BATCHELOR, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Harry (Skip) A. Staley (retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), Robert E. Law (retired judge of the former Orange Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), and Roger A. Luebs, Judges.[1]  Affirmed in part; reversed in part.

_____

[1] Judge Staley presided over defendant's first trial.  Judge Law presided over the second trial.  Judge Luebs sentenced defendant.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Lilia E. Garcia and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant Larry Jason Batchelor appeals from his conviction—in two separate trials—of implied malice murder (Pen. Code, [2] § 187, subd. (a), count 1) and gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a), count 2).[3]

As to the first trial, defendant contends (1) the evidence was insufficient to support his conviction of gross vehicular manslaughter, and (2) the prosecutor improperly commented on defendant's exercise of his right to a jury trial and improperly vouched for the People's case. As to the second trial, defendant contends: (1) the evidence was insufficient to support his conviction of implied malice murder; (2) former section 22[4] violates principles of due process because it authorizes disparate treatment for the prosecution and defense with respect to the admission of evidence of voluntary intoxication to prove implied malice; (3) the trial court erred in refusing to permit defense counsel to read or present to the jury section 188 and case law regarding implied malice;

[2] All further statutory references are to the Penal Code except as otherwise indicated.

[3] Defendant filed a petition for writ of habeas corpus in case No. E061043, which we ordered considered with this appeal. We will resolve that petition by separate order.

[4] Section 22 was renumbered as section 29.4 and amended effective January 1, 2013. (Stats. 2012, ch. 162, § 119 (S.B. 1171).)

(4) the trial court erred in failing to instruct the jury on gross vehicular manslaughter and/or to inform the jury that defendant had been convicted of that offense in the first trial; (5) the prosecutor committed misconduct by arguing to the jury that if it did not convict defendant of murder he would be a free man and by appealing to the passion and prejudice of the jury; (6) he was denied due process by being sentenced by a judge who had not presided over either trial and who had failed to read the trial transcripts or the defense sentencing memoranda; and (7) the cumulative error doctrine requires reversal.

## II.  FACTS AND PROCEDURAL BACKGROUND

Although defendant had two trials and raises different issues with respect to each, the evidence presented at both trials was substantially the same.  To the extent the evidence differed, it will be addressed as relevant in the discussion of the issues.

On March 7, 2009, defendant picked up Idalee Mofsie, his friend and coworker, at her home in Rubidoux and drove to Lake Alice Bar and Grill on University Avenue in Riverside (Lake Alice), arriving at 8:30 or 9:00 p.m.  The two shared a pitcher and a half to two pitchers of beer before they left about 11:00 p.m.

At approximately 11:00 p.m., Jeffrey Canada and his girlfriend, Tiffany Sorenson, were walking a dog near where University Avenue curves north at a sharp angle and turns into Redwood Drive.  They heard a car engine that sounded "revved up" coming from behind them.  They turned and saw a Chevrolet Suburban approaching the curve at a high speed.  The posted speed limit there is 40 miles per hour.

3

Canada commented that the car was not going to make the turn, and they started running toward the curve. The Suburban struck the traffic island at the curve and crashed into a palm tree on the west side of Redwood Drive. They did not see any brake lights illuminate.

John Delaney, Jr., had just driven through the same curve and was waiting for a signal light on Redwood Drive to turn green. He heard the sound of screeching tires, and he looked into his rearview mirror and saw the Suburban crash.

Mofsie was slumped over in the front passenger seat. Defendant kept getting in and out of the car trying to wake her up, but she was unresponsive. The police arrived in about five minutes. A police officer asked defendant to get out of the car so paramedics could provide medical assistance to Mofsie. Defendant's eyes were red and watery; his breath smelled of alcohol and his speech was slow and slurred. Defendant said he had been driving west on University at 30 miles per hour. He did not remember which lane he had been in. He said he had tried to stop the car, but his brakes had failed. Defendant told an officer he and Mofsie split a pitcher and a half of beer at Lake Alice, but he did "[n]ot really" feel the effects of the alcohol. Defendant denied having any medical conditions. He said he had slept 10 hours the previous night, and he had eaten a hotdog at noon.

Defendant's blood was drawn at the hospital at 12:25 a.m. on March 8, 2009; it measured at .22 percent blood alcohol. Under different scenarios, defendant's blood-alcohol level at the time he was driving could have been between .13 percent and .24 percent. A person with those levels of blood alcohol would have had physical and mental

4

impairments that included slower actions and thought processes, delays in response and reaction time, lack of judgment, risky behaviors, an inability to control steering and maintain a lane of travel, and impairments to depth perception and peripheral vision. The degree of impairment increases as the alcohol concentration level increases.

Mofsie was killed as a result of the collision; the cause of death was multiple blunt-force traumatic injuries, including a complete transection of her spinal column between the base of the skull and the first cervical vertebra and at the level of the third cervical vertebra. She also had multiple rib fractures and a compound fracture of the elbow.

A traffic reconstruction expert determined that defendant's car was traveling at a minimum speed of 50 to 57 miles per hour when it crashed into the palm tree. That speed did not allow him to make the 100-degree curve from University Avenue onto Redwood Drive. The critical speed to make that turn from the inside lane was 33 to 37 miles per hour and from the outside lane 30 to 34 miles per hour. The officer testified that defendant had violated the basic speed law (Veh. Code, § 22350), had made an unsafe turn (Veh. Code, § 22107), had traveled across double yellow lines at the intersection (Veh. Code, § 21460), and had traveled on the wrong side of the road (Veh. Code, § 21650). From skid marks left on the street, it did not appear that defendant had used his brakes. However, the officer testified that all the violations resulted from defendant losing control of the car once the accident was set in motion.

A police investigator determined there was no problem with the lighting on University Avenue that night, and there was no obstruction. A mechanical inspection of

5

defendant's car revealed the braking system on defendant's car was operational, although some scoring on the inner disk would have affected brake performance by about 30 percent. The tire treads were within the acceptable range.

Defendant had been arrested for driving under the influence of alcohol in April 2003, and he pled guilty to that charge. In that incident, his blood-alcohol level had been measured at .14 percent and .15 percent. In October 2003, he signed a notice of completion for a first offender drinking program, representing that he had met all the attendance and course requirements. The program included open group discussions, films and lectures, and three individual meetings with a counselor. The program covered, among other topics, the impairment of driving abilities, skills, and judgment after consumption of alcohol and other drugs and the consequences of continued drinking and driving. However, defendant testified that his prior drinking program had a lot of group discussions, but he had not seen any films, and no one had ever told him that possible consequences of driving under the influence of alcohol included getting into a car accident or killing someone.

Defendant testified he and Mofsie had shared two pitchers of beer at Lake Alice but had not finished the second pitcher. He did not feel any physical or mental impairment when they left the bar. When he neared the intersection of University Avenue and Redwood Drive, he did not see the traffic island at the curve until he was only about 20 feet away. He tried to hit the traffic island to stop because his brakes were not working.

In the first trial, the jury found defendant guilty of gross vehicular manslaughter while intoxicated but it was unable to reach a verdict as to the murder charge,[5] and the trial court declared a mistrial as to that count. In the second trial, the jury found defendant guilty of second degree murder. The trial court sentenced defendant to 15 years to life for the murder and imposed and stayed a six-year term for the manslaughter count under section 654.

III. DISCUSSION

**A. Request for Judicial Notice**

Defendant has requested this court to take judicial notice of the facts that (1) a few months after the accident that underlies this case, the City of Riverside's traffic engineer ordered the addition of a traffic sign on University Avenue and yellow reflective paint and reflectors on sections of the raised island on Redwood Drive; (2) there were no traffic lights at that intersection on the night of defendant's accident; and (3) the intersection where the accident occurred is located less than 0.9 miles from the courthouse where his two trials occurred and on a major route west from downtown Riverside to the 60 Freeway. The People opposed the request, and we reserved our ruling for consideration with the appeal.

We deny the request. The information was not before the trier of fact in either trial. Rather, it is postjudgment evidence that goes to the merits of his conviction. (*People v. Sanchez* (1995) 12 Cal.4th 1, 59, fn.5, disapproved on another ground as stated

---

[5] Eight jurors voted guilty and four jurors voted not guilty on the murder charge.

7

in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) To the extent it supports an argument for ineffective assistance of counsel, such an argument based on facts outside the trial record is more appropriately raised in a petition for writ of habeas corpus.

**B. Sufficiency of Evidence of Gross Vehicular Manslaughter**

Defendant contends the evidence in his first trial was insufficient to support his conviction of gross vehicular manslaughter.

### 1. *Standard of Review*

When a defendant challenges the sufficiency of the evidence to support his criminal conviction, this court ""'"review[s] the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'"" (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1322.)

### 2. *Analysis*

Manslaughter is the unlawful killing of a human being without malice. (*People v. Contreras* (1994) 26 Cal.App.4th 944, 954.) A conviction of gross vehicular manslaughter requires: "(1) driving a vehicle while intoxicated; (2) when so driving, committing some unlawful act, such as a Vehicle Code offense with gross negligence, or committing with gross negligence an ordinarily lawful act which might produce death; and (3) as a proximate result of the unlawful act or the negligent act, another person was killed." (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1159.) In *People v. Ochoa* (1993) 6 Cal.4th 1199, the court defined gross negligence as "'the exercise of so slight a

8

degree of care as to raise a presumption of conscious indifference to the consequences. . . . The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved.'" (*Id.* at p. 1204.) However, "gross negligence cannot be shown by the *mere fact* of driving under the influence and violating the traffic laws." (*People v. Von Staden* (1987) 195 Cal.App.3d 1423, 1427 (*Von Staden*.*)

In *People v. Ochoa*, the court determined that the evidence was sufficient to support the defendant's conviction of gross vehicular manslaughter while intoxicated when the "defendant, (a) having suffered a prior conviction for driving under the influence of alcohol, (b) having been placed on probation, (c) having attended traffic school, including an alcohol-awareness class, and (d) being fully aware of the risks of such activity, nonetheless (e) drove while highly intoxicated, (f) at high, unsafe and illegal speeds, (g) weaving in and out of adjoining lanes, (h) making abrupt and dangerous lane changes (i) without signaling, and (j) without braking to avoid colliding with his victims' vehicle." (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1208.)

Similarly, in *Von Staden*, the court found the evidence sufficient to establish gross negligence when the defendant had a blood-alcohol level of .22 percent and drove up to 30 miles per hour over the speed limit on a foggy night. (*Von Staden*, *supra*, 195 Cal.App. 3d at pp. 1425-1426.) In *People v. Bennett* (1991) 54 Cal.3d 1032, the court upheld a finding of gross negligence when the defendant who was intoxicated wove in and out of traffic, passed several cars on a blind curve, exceeded the speed limit, and lost control of the car at the bottom of a hill. (*Id.* at pp. 1034-1035; see also *People v. Hansen*

9

(1992) 10 Cal.App.4th 1065, 1070, 1076 [defendant's blood-alcohol level was .20 percent three hours after the accident; his passengers had repeatedly asked him to slow down, but he ignored their requests as well as one passenger's request for help in finding the seat belt].)

Here, the evidence supporting the first and third elements of gross vehicular manslaughter was not in dispute. As recounted above, defendant drove himself and Mofsie to the bar, and after they shared one and a half to two pitchers of beer, he started driving Mofsie home. Defendant had a blood-alcohol level of between .13 percent and .24 percent. It was undisputed that Mofsie's death resulted from the accident.

As to the second element, a witness testified that defendant was driving so fast up University Avenue that it sounded like his car engine was "revved up." A traffic reconstruction expert testified his speed had been at least 50 to 57 miles per hour when the vehicle crashed into the palm tree. The critical speed for travelling through the curve was 30 to 37 miles per hour, depending on which lane defendant was in, and the posted speed limit was 40 miles per hour. An officer testified defendant violated numerous Vehicle Code sections.

As to whether he committed those unlawful acts with gross negligence, defendant had a prior conviction for driving under the influence of alcohol and had attended a first-time offender program that addressed the dangers of driving under the influence of alcohol. Substantial evidence therefore supports the conclusion a reasonable person in defendant's position would have been aware of the risk involved in his behavior.

We conclude the jury could reasonably find that each of the elements of gross vehicular manslaughter was established beyond a reasonable doubt.

## C. Prosecutor's Argument to Jury

Defendant contends the prosecutor improperly commented in the first trial on defendant's exercise of his right to a jury trial and improperly vouched for his case.

### 1. Additional Background

In rebuttal argument in the first trial, the prosecutor stated: "Ladies and gentlemen, just because someone takes a case to trial, just because a defendant exercises his constitutionally protected right to go to trial, doesn't mean in any way there are any inherent weaknesses in the case before you. It doesn't mean there's really anything to contest. It doesn't mean there are weaknesses. I'll give you an example of that." The prosecutor then recounted the events of the shooting of President John F. Kennedy and Jack Ruby's subsequent televised shooting of Lee Harvey Oswald. He continued, "Jack Ruby was subsequently arrested, charged with murder. And what do you think Jack Ruby did at that point in time? He exercised his constitutional right to go to trial. And he went to trial and was ultimately convicted. [¶] And I give you that example because I want you to think that—I don't want you to believe in any way that just because a case goes to trial there are any inherent weaknesses in the proof before you. [¶] There are no weaknesses in this case. There is—there's nothing that is—the integrity of this case is not weakened in any way. It is an absolute solid case, proven to you beyond a reasonable doubt."

11

## 2. Forfeiture

The People contend defendant has forfeited his challenge to the prosecutor's argument because his counsel failed to object in the trial court and failed to request a jury admonition. "A defendant cannot complain on appeal of error by a prosecutor unless he or she made an assignment of error . . . in a timely fashion in the trial court and requested the jury be admonished to disregard the impropriety. [Citations.]" (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1006-1007.) "The only exception is for cases in which a timely objection would have been futile or ineffective to cure the harm. [Citation.]" (*Ibid.*)

Even if we assume for purposes of argument that the prosecutor's argument was improper, nothing in the record before us suggests the trial court would have overruled a timely and proper objection or would have failed to admonish the jury if so requested or that an admonishment would have been ineffective to cure any harm. We conclude defendant has forfeited his claim of prosecutorial misconduct. (*People v. Mesa*, *supra*, 144 Cal.App.4th at pp. 1006-1007.)

## 3. Effective Assistance of Counsel

As an alternative argument, defendant contends his trial counsel was ineffective for failing to object to the prosecutor's argument.

A defendant who contends he received ineffective assistance of counsel at trial must establish both that his counsel's performance was deficient when measured against the standard of a reasonably competent professional and that in the absence of his counsel's failings, a more favorable outcome was reasonably probable. (*Strickland v.*

12

*Washington* (1984) 466 U.S. 668, 687.)  "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance."  (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502.)  "[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal.  [Citation.]"  (*People v. Lopez* (2008) 42 Cal.4th 960, 972.)

In her closing argument, defense counsel suggested the evidence against defendant was weak, and defendant wanted to go to trial in this case so he could fight the charges against him, although he had pleaded guilty in two earlier cases.  The prosecutor's challenged statements arguably responded to that position.  In *People v. Lopez*, our Supreme Court posited a sound tactical purpose for failing to object under similar circumstances.  The court noted that defense counsel had expressed his personal belief that the defendant was innocent but objected on appeal to the prosecutor's argument that she believed the defendant was guilty.  The court stated:  "Thus, one reason for defense counsel's failure to object when the prosecutor said that she believed in defendant's guilt may have been defense counsel's concern that the jury would find him a hypocrite for complaining about the prosecutor's argument ('But I think his client is guilty') when defense counsel himself had used a similar tactic, by expressing a belief in defendant's assertion of innocence."  (*People v. Lopez*, *supra*, 42 Cal.4th at p. 972.)

Here, likewise, defense counsel could have had a sound tactical reason for failing to object to the prosecutor's argument.  Thus, defendant has failed to show that he received ineffective assistance of counsel.

13

**D. Sufficiency of Evidence of Implied Malice Murder**

Defendant contends the evidence was insufficient to support his conviction in the second trial of implied malice murder.

*1. Analysis*

A conviction of second degree murder requires a finding of malice aforethought. (§§ 187, subd. (a), 189.) "Malice is implied when the killing is proximately caused by "'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'" [Citation.]" (*People v. Knoller* (2007) 41 Cal.4th 139, 143.) A person who, knowing the hazards of drunk driving, drives a vehicle while intoxicated and proximately causes the death of another may be convicted of second degree murder under an implied malice theory. (*People v. Watson* (1981) 30 Cal.3d 290, 300-301 (*Watson*).) A finding of implied malice, unlike a finding of gross negligence, "depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard." (*Id.* at pp. 296-297.) "Even if the act results in a death that is accidental . . . the circumstances surrounding the act may evince implied malice. [Citations.]" (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 110, fn. omitted.)

In *Watson*, the court found the following evidence sufficient to hold the defendant to answer for second degree murder: "Defendant had consumed enough alcohol to raise his blood-alcohol content to a level which would support a finding that he was legally intoxicated. He had driven his car to the establishment where he had been drinking, and

14

he must have known that he would have to drive it later. It also may be presumed that defendant was aware of the hazards of driving while intoxicated. As we stated in *Taylor v. Superior Court* (1979) 24 Cal.3d 890, 897 [157 Cal.Rptr. 693, 598 P.2d 854]: 'One who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others.' Defendant drove at highly excessive speeds through city streets, an act presenting a great risk of harm or death. Defendant nearly collided with a vehicle after running a red light; he avoided the accident only by skidding to a stop. He thereafter resumed his excessive speed before colliding with the victims' car, and then belatedly again attempted to brake his car before the collision (as evidenced by the extensive skid marks before and after impact) suggesting an actual awareness of the great risk of harm which he had created. In combination, these facts reasonably and readily support a conclusion that defendant acted wantonly and with a conscious disregard for human life." (*Watson*, *supra*, 30 Cal.3d at pp. 300-301.)

In *People v. Autry* (1995) 37 Cal.App.4th 351, the defendant argued the evidence was insufficient to support a second degree murder verdict because "the accident [in which the defendant ignored a warning sign of a lane closure, veered into the median to avoid a collision with another car, and killed two construction workers] occurred in an area of decreased visibility and a blind curve." (*Id*. at pp. 356-359.) The court rejected that argument, explaining, "The jury was entitled to discount the significance of this, in

15

light of testimony of other motorists that the sign was clearly visible from a distance and that traffic was able to continue without incident." (*Ibid.*)

In *People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1080, the defendant was driving at about 75 miles per hour and was accelerating when he rear-ended a car that was stopped at a red light and killed one of the occupants of that car; his blood-alcohol level at the time of the accident was extrapolated to be from .16 to .21 percent. (*Id.* at pp. 1074-1075.) The court affirmed his conviction of second degree murder.

In *People v. Johnigan* (2011) 196 Cal.App.4th 1084, the defendant planned to drive to a bar and drive home alone after drinking. She consumed excessive amounts of alcohol; friends warned her she was too intoxicated to drive and could harm someone, and she turned down a ride home. After driving four miles, she stopped on a highway, partially blocking the traffic lane. When officers arrived, she sped off at up to 70 miles per hour, drove on the road shoulder for half a mile, and then swerved across two lanes, hitting another car head on. (*Id.* at p. 1087.) The court held the evidence was sufficient to support her conviction of implied malice murder. (*Id.* at p. 1092.)

In *People v. Moore* (2010) 187 Cal.App.4th 937, the court rejected the defendant's contention that the evidence was insufficient to support his conviction of implied malice murder. The court summarized the evidence as follows: "Here, Moore drove 70 miles per hour in a 35-mile-per-hour zone, crossed into the opposing traffic lane, caused oncoming drivers to avoid him, ran a red light and struck a car in the intersection without even attempting to apply his brakes." (*Id.* at p. 941.)

In *People v. Contreras*, the defendant, who had a recent prior history of numerous traffic violations, including reckless driving, and who knew the brakes on his tow truck were not functioning properly, raced other tow truck drivers to the scene of an accident at the time of the fatal collision. The court upheld his conviction of second degree murder. (*People v. Contreras*, *supra*, 26 Cal.App.4th at pp. 947-957.)

In summary, courts have identified factors relevant for upholding a murder conviction based on drunk driving: "(1) a blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving." (*People v. Talamantes* (1992) 11 Cal.App.4th 968, 973.) Although defendant's conduct may not have been as egregious as that of the defendants in the cases discussed above, nonetheless, sufficient evidence established each of those factors in the present case.

First, defendant's blood-alcohol level was measured at .22 percent at 12:25 a.m. on March 8, 2009, and an expert testified it would have been .24 percent at the time of the accident. Although other evidence suggested it could have been as low as .13 percent at the time of the accident, it was undisputed that his blood-alcohol level was above the .08 percent legal limit.

Second, defendant picked up Mofsie at her home and drove to Lake Alice, where they consumed one pitcher of beer and part of a second. Defendant planned and intended to drive himself and Mofsie home after drinking.

Third, defendant had previously been arrested in April 2003 for driving under the influence of alcohol. In October 2003, defendant signed a notice of completion for a first

17

offender drinking driver program. The program included group discussions, films and lectures, and three individual meetings with a counselor. The program emphasized the dangers of drinking and driving and covered, among other topics, the impairment of driving abilities, skills, and judgment after consumption of alcohol and other drugs, and the consequences of continued drinking and driving. From that evidence, the jury could reasonably presume defendant was aware of the hazards of driving while intoxicated.

Finally, defendant's speed was at least 50 to 57 miles per hour when he crashed the car, and the critical speed to negotiate the sharp curve was 32 to 37 miles per hour. From that evidence, the jury could reasonably find that defendant's driving was highly dangerous.

### E. Jury Instructions

Defendant contends the trial court erred in failing to instruct the jury on gross vehicular manslaughter in the second trial and to inform the jury in the second trial that defendant had been convicted of that offense in the first trial.

*1. Additional Background*

In the second trial, defense counsel requested that the jury be instructed on manslaughter, or that it be informed that defendant had been convicted of gross vehicular manslaughter while intoxicated in the first trial. Defense counsel argued that without such instruction or information, the jury faced an all-or-nothing choice. The court stated: "My inclination is to ignore the fact that there has been an earlier trial, but if you have some theory that suggests that we need to explore it, let me know, okay?" In discussing the jury voir dire process, the trial court commented that the jurors would eventually

18

figure out that defendant had had a prior trial in the case, and the court did not want to hide the fact of the prior trial. Following voir dire, the prosecutor requested that no reference be made to defendant's conviction of gross vehicular manslaughter while intoxicated. Defense counsel commented that she wanted the fact of the prior conviction to be introduced into evidence but stated she did not have any case authority to support its admission. The trial court ruled that defendant's prior conviction would be inadmissible but stated it would reconsider its ruling if the facts warranted it.

The jury was instructed only on the offense of second degree murder.

### 2. Analysis

Gross vehicular manslaughter is a lesser related but not a lesser included offense of second degree murder. (*People v. Sanchez* (2001) 24 Cal.4th 983, 991, overruled on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1229.) The People argue the trial court has no duty to instruct the jury on a lesser related offense and may not do so over the prosecution's objection.

The People's statement of the law is incomplete; rather, "California law does not permit a court to instruct concerning an *uncharged* lesser related crime unless agreed to by both parties." (*People v. Hall* (2011) 200 Cal.App.4th 778, 781, italics added; see also *People v. Jennings* (2010) 50 Cal.4th 616, 781, and *People v. Kraft* (2000) 23 Cal.4th 978, 1065.) In *People v. Birks* (1998) 19 Cal.4th 108, the court overruled prior case law which had held that a criminal defendant had a *unilateral* entitlement to instructions on lesser related offenses. (*Id.* at p. 136.) In doing so, the court agreed that "allowing the defendant to obtain instructions on lesser *uncharged and unincluded* offenses interferes

19

impermissibly 'with . . . the prosecutor's discretionary function to select the offenses of which the defendant may be charged and convicted.' [Citation.]" (*Id.* at p. 123, italics added.) The concern of the courts in those cases was the great deference courts accord to the prosecutor's discretion to select the charges. However, those cases did not address the situation presented here, in which the prosecution *did* charge the lesser related offense, and the defendant was convicted of that offense in a prior trial.

Defendant's request that the second jury be instructed on gross vehicular manslaughter was properly denied. Defendant had already been tried and convicted of that offense. The second jury therefore could not appropriately be asked to render a verdict with respect to gross vehicular manslaughter, and it would make no sense to instruct on the elements of that offense.

Nevertheless, nothing in defendant's request to inform the jury of his conviction on the charge of gross vehicular manslaughter in his first trial interfered in any way with the prosecution's broad discretion to decide what offenses to charge. The People chose to charge both murder and manslaughter in the information. The circumstance that the first jury was unable to reach a verdict on the murder charge should not properly be an opportunity to retry the case in a new posture, giving the jury the false impression that, absent a conviction for murder, defendant's actions would be left unpunished. In other words, the People may not have their cake and eat it too. Defendant was in fact charged with both murder and manslaughter, and convicted of the latter offense in his first trial; we see no appropriate reason why both of defendant's juries should not have been aware of that circumstance.

20

We conclude the trial court erred by instructing defendant's second jury in a manner that gave the jury the false impression that defendant would be left entirely unpunished for his actions if the jury did not convict him of murder. There are likely many ways the trial court could have appropriately dispelled that false impression. Perhaps the most straightforward way to do so would have been to inform the jury of the results of the first trial, and to emphasize that its only task, left unresolved by the first trial, was to consider whether the elements of the single remaining offense had been proven beyond a reasonable doubt.

Moreover, the trial court's error was compounded by the prosecutor's argument to the jury: "And now is the time that you have to hold this person accountable. Now is the time that you have to send the message that you drink and drive and kill someone, you're going to be held accountable. There is only one count in this case that you have to decide on. This is it. Hold him accountable for killing someone." Although perhaps the argument was *technically* correct, in that only one count *remained* for the jury to decide in the second trial, the argument certainly created the misleading impression that unless the jury found him guilty of the murder charge, he would not be held accountable at all for Mofsie's death.[6]

We turn now to the issue of prejudice. Only if an examination of the record establishes a reasonable probability that the instructional error affected the outcome is

_____

[6] Because defendant did not object below that the statement was improper, we do not consider whether the argument crossed the boundary of prosecutorial misconduct. (See *People v. Parson* (2008) 44 Cal.4th 332, 359 [to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition].)

21

reversal of defendant's conviction appropriate. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

In *People v. Soojian* (2010) 190 Cal.App.4th 491, 520, the court cited cases that stand for the proposition that some courts "have found it persuasive that the first trial ended in a hung jury when deciding whether the error that occurred in the retrial was prejudicial. [Citations.]"[7] Here, four jurors in the first trial voted to find defendant not guilty of the murder charge. Although the evidence to support the murder conviction was sufficient, as we have discussed above, it was by no means overwhelming. Particularly in light of the prosecutor's argument, underlining and attempting to capitalize on the second jury's incomplete information from the instructions, there is a reasonable probability that the second jury's false impression that a failure to convict defendant of murder would leave him unpunished for his actions was the determining factor why the second trial resulted in a conviction for murder, while the first trial did not. We therefore conclude the error requires reversal.

### F.  Other Alleged Errors

Although defendant raises other contentions of error with respect to his second trial and sentencing, those issues are moot.

---

[7] We reject the People's argument, asserted at oral argument, distinguishing *Soojian* and cases cited therein from the present case on its facts. The principle for which we cite *Soojian* is equally applicable on the facts of the present case.

22

## IV.  DISPOSITION

Defendant's conviction of second degree murder is reversed.  In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION


|  | HOLLENHORST |
|---|---|
|  | Acting P. J. |

We concur:

| MCKINSTER |  |
|---|---|
| J. |  |

| CODRINGTON |  |
|---|---|
| J. |  |