Filed 6/9/16  P. v. Simmons CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LEYLANI SIMMONS,<br><br>Defendant and Appellant. | A143166<br><br>(San Mateo County<br>Super. Ct. No. SC075384) |

Defendant Leylani Simmons drove drunk, sped, ignored traffic signs, and attempted to evade police.  Finally, her car overturned and her passenger was killed. Because defendant had previously been convicted of reckless driving and driving under the influence, the San Mateo County District Attorney alleged she was keenly aware of the risks of reckless and drunken driving and so charged her with implied malice second degree murder.  Defendant sought to exclude evidence of her prior crimes.  The trial court allowed it, and a jury found her guilty of murder.  On appeal, she challenges only some of the prior crimes evidence, specifically that pertaining to her reckless driving conviction.  We affirm, concluding the trial court did not abuse its discretion in allowing the prior crimes evidence.

**BACKGROUND**

*The Charged Crimes*

In June 2011, Officer Serbin observed a jeep approach a stop sign at a high rate of speed.  The jeep did not stop, but moved into the opposing lane of traffic, passed a car

1

stopped at the sign, and continued on. The officer engaged his lights and sirens and pursued. The jeep sped up and went through another six stop signs without slowing. It occasionally veered into oncoming traffic, requiring other motorists to take evasive action. The pursuing officer had to accelerate to 80 miles per hour to keep pace. The chase ended when the jeep turned and, traveling at about 42 miles per hour, flipped over, killing the passenger. Defendant, whose blood-alcohol level was later estimated to be between 0.23 percent and 0.24 percent, identified herself as the driver.

The San Mateo District Attorney charged defendant, in an information filed March 23, 2012, with murder (Pen. Code, § 187, subd. (a)), gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)), causing bodily injury while driving intoxicated, and engaging in further unlawful conduct (Veh. Code, § 23153, subd. (b)), causing bodily injury while driving with a blood-alcohol level at or above 0.08 percent and engaging in further unlawful conduct (Veh. Code, § 23153, subd. (a)), driving with a license suspended because of driving under the influence (Veh. Code, § 14601.2, subd. (a)), and causing serious bodily injury and death while driving and evading a peace officer (Veh. Code, § 2800.3).

Defendant pled nolo contendere to, and was found guilty of, driving with a suspended license. The two Vehicle Code section 23153 charges were dismissed. The other charges were tried to a jury.

### Evidence of Prior Driving Incidents

Part of the prosecution's murder case involved showing defendant uniquely appreciated the severe risks of drunk and reckless driving. The prosecution sought to introduce, and defendant sought to exclude, evidence of three prior driving incidents: (1) a sustained juvenile petition alleging defendant, in 2003 (when 17 years old), drove recklessly under Vehicle Code 23103 on a high school campus; (2) an April 2011 conviction for reckless driving after defendant drove her car at a restaurant manager who

2

was chasing down defendant for an unpaid bill; and (3) a February 2011 conviction for drunk driving.

The trial court excluded the 2003 juvenile incident as too remote and minimal; it was a "high school situation." It allowed the evidence of the more recent June 2010 dine and dash incident (resulting in the April 2011 conviction for reckless driving) and the October 2010 drunk driving incident (resulting in the February 2011 driving under the influence (DUI) conviction), concluding these events had relevance to defendant's "knowledge of the dangers of driving recklessly or imprudently."

### The Dine and Dash

At trial, the restaurant manager testified about the dine and dash. In June 2010, a year before defendant's current offense, a server was suspicious that a table of two women and one man was likely to leave without paying their bill. The server informed the manager, who kept an eye on the man who remained at the table after the women left. When that man got up to leave, the manager demanded payment. The man fled into a jeep that was out on the road in front of the restaurant. The two women from the table had taken seats in the front. The jeep, however, could not move forward because of bumper-to-bumper traffic. Instead, the woman driver, who was defendant, drove the jeep up on the curb and scared the manager. The manager glanced at defendant, who then pulled up further, scaring the manager once again. Defendant then laughed and pointed at the manager. The manager wrote down the jeep's license plate number, and defendant was found and convicted of reckless driving.

### The DUI

Just a few months after the dine and dash, in October 2010, an officer saw defendant's jeep going 45 miles per hour in a 25-miles-per-hour zone. He pulled her over, detected alcohol on her breath, measured her blood alcohol level at 0.17 percent, and arrested her for DUI.

3

Defendant pleaded guilty to the DUI and was, at that time, specifically informed by the court that if she again drove under the influence and someone was killed, she could be charged with murder. From February through June of 2011—until just before the crash that resulted in the murder charge—defendant attended a mandatory 15-week program for first-time DUI offenders. The chief operating officer of the company offering the program testified. He explained participants learn about the dangers, to themselves and to others, of drunk driving. Notes from defendant's sessions contain defendant's statements about how she gained an increased awareness of how drinking can make her aggressive and that she had not been driving while intoxicated since starting the program.

During closing argument, the prosecutor argued the dine and dash gave defendant knowledge that reckless driving was against the law and showed she knew her vehicle could be used as a weapon. The DUI, continued the prosecutor, gave defendant knowledge that driving under the influence was illegal and dangerous, and that a future DUI resulting in death could lead to murder charges. Defense counsel argued at length that these prior convictions were irrelevant and the evidence was meant only to prejudice defendant in the jury's eyes, something the trial court's jury instructions forbade.

Ultimately, the jury convicted defendant of murder, gross vehicular manslaughter, and evading a peace officer. The trial court imposed a sentence of 15 years to life for the murder conviction and stayed sentencing on the other counts under Penal Code section 654. Defendant appealed, challenging the trial court's decision to allow evidence of the dine and dash and DUI.

## DISCUSSION

"A conviction of second degree murder requires a finding of malice aforethought. (§§ 187, subd. (a), 189.) 'Malice is implied when the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of

4

another and who acts with conscious disregard for life.' " [Citation.]' (*People v. Knoller* (2007) 41 Cal.4th 139, 143 . . . .) A person who, knowing the hazards of drunk driving, drives a vehicle while intoxicated and proximately causes the death of another may be convicted of second degree murder under an implied malice theory. (*People v. Watson* (1981) 30 Cal.3d 290, 300–301 . . . .) A finding of implied malice, unlike a finding of gross negligence, 'depends upon a determination that the defendant actually appreciated the risk involved, i.e., a subjective standard.' (*Id.* at pp. 296–297.) 'Even if the act results in a death that is accidental . . . the circumstances surrounding the act may evince implied malice.' " (*People v. Batchelor* (2014) 229 Cal.App.4th 1102, 1112–1113, italics omitted.)

It is common in drunk driving murder cases for the prosecution to introduce evidence of prior reckless or drunk driving incidents for the purpose of showing defendant's knowledge of the associated risks and hazards. (*People v. Ortiz* (2003) 109 Cal.App.4th 104, 112 (*Ortiz*); Evid. Code, § 1101, subd. (b) [evidence showing a defendant's "knowledge" still admissible even if it might also be evidence of a propensity to act a certain way].) "[C]ourts have recognized repeatedly that a motor vehicle driver's previous encounters with the consequences of recklessness on the highway—whether provoked by the use of alcohol, of another intoxicant, by rage, or some other motivator— sensitizes him to the dangerousness of such life-threatening conduct. This is so because apprehensions for drunk driving, and the citations, arrests, stiff fines, compulsory attendance at educational programs, and other consequences do not take place in a vacuum." (*Ortiz*, *supra*, 109 Cal.App.4th at pp. 112–113.)

Yet even if evidence is admissible to show knowledge (Evid. Code, § 1101, subd. (b), the trial court may exclude the evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury" (Evid. Code, § 352). (See *Ortiz*, *supra*, 109 Cal.App.4th at pp. 116.)

5

Defendant does not challenge the trial court's Evidence Code section 352 ruling as to the DUI evidence, but does argue it should have excluded the evidence of the dine and dash. We review the trial court's decision for abuse of discretion (see *People v. Moore* (2010) 187 Cal.App.4th 937, 943), asking if the court's ruling falls outside the bounds of reason (*People v. Johnson* (2015) 61 Cal.4th 734, 750).

Both incidents, relatively close in time to the charged crimes, were highly probative of defendant's knowledge that driving recklessly and while intoxicated put her and others at grave risk, and that she was prone to reckless driving while under the influence. As to the dine and dash, defendant suffered a criminal conviction for reckless driving because she turned her jeep into a threatening weapon in a display of aggression. (See *Ortiz*, *supra*, 109 Cal.App.4th at p. 115 ["apprehension and prosecution . . . must impart a knowledge and understanding of the personal and social consequences" of reckless driving].) As a result of the DUI, defendant again learned that her reckless driving behavior (driving 20 miles per hour over the speed limit in the wrong lane) had consequences. She learned the particular dangers of driving drunk, not only from the conviction itself, but from her 15-week DUI training program, and an explicit warning that a murder charge would be on the table if she again drove drunk and killed someone. As her first offender program notes reflect, defendant also made the connection between intoxication and aggression, which she knew from the dine and dash could lead her to reckless behavior.

Unquestionably, the dine and dash cast defendant in a less-than-flattering light— as mean spirited and arrogant, and as a petty thief. The incident was, however, of central relevance to the murder charge. And, given that the restaurant manager was not harmed in that episode, the evidence of the dine and dash was no more likely to arouse emotional bias than the charged offenses which resulted in the gruesome death of defendant's passenger. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405.) The fact that defendant was convicted and already punished for the dine and dash further lessened its potential

6

prejudice. (*Ortiz*, *supra*, 109 Cal.App.4th at p. 118.) Moreover, the trial court's instructions limited the permissible use of the prior crimes evidence, and defense counsel focused on these instructions during closing arguments. (*Ibid.*; *People v. Allen* (1986) 42 Cal.3d 1222, 1271, fn. 34.) Nor was the dine-and-dash evidence unduly cumulative or consumptive of trial time, as it was presented through the testimony of only one witness.

On balance, then, we cannot conclude the trial court exceeded the bounds of reason in concluding the evidence of the dine and dash was more probative than prejudicial. Nor was the trial court's proper application of routine evidence rules a deprivation of defendant's due process or other constitutional rights. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1010.)

Even if the trial court erred in allowing the dine and dash evidence, which it did not, such error was not prejudicial. (See *Ortiz*, *supra*, 109 Cal.App.4th at p. 119.) We only would reverse a conviction for a faulty evidentiary ruling under Evidence Code section 352 if " 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Trujeque* (2015) 61 Cal.4th 227, 280 [Watson review applies to Evidence Code section 352 errors].) The jury here also heard evidence of defendant's prior DUI conviction, including the court's admonition she could be facing a murder charge should she commit another DUI and kill someone. The jury also heard how defendant, just before the accident, was seriously intoxicated, got behind the wheel of her jeep, sped egregiously, swerved into oncoming traffic, and ran past numerous stop signs while evading police officers with sirens and lights. "These incidents alone would have been sufficient to sustain a finding of implied malice. In light of these circumstances, if the trial court erred in admitting the challenged evidence, we conclude it did not affect the outcome." (*Ortiz*, *supra*, 109 Cal.App.4th at p. 119.)

**DISPOSITION**

The judgment is affirmed.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Dondero, J.

A143166, *People v. Simmons*

9