Filed 12/5/23  P. v. Bell CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B322496 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA145962) |
| v. | |
| CHIVON SUGAR BELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hector E. Gutierrez, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Blake Armstrong, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted Chivon Sugar Bell of gross vehicular manslaughter under Penal Code section 191.5, subdivision (a).[1] Bell argues substantial evidence did not support the verdict because the evidence showed she acted with ordinary negligence, but not gross negligence. Because a rational trier of fact could have found Bell acted with conscious indifference to the consequences of driving while under the influence of alcohol, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Bell's Boyfriend Dies in a Car Accident*

One night in November 2017, Bell met her boyfriend, Alton Ray Griffin, Jr., at a karaoke bar inside a bowling alley between 10:00 p.m. and 11:00 p.m. Bell later said that earlier in the evening she had two glasses of wine at her cousin's house and that when she arrived at the karaoke bar she had a vodka and cranberry drink.

Approximately 90 minutes after she arrived at the bar, Griffin drove Bell to a cash machine and then to a taco truck. After they finished eating, Griffin began driving Bell back to her cousin's house, but he pulled over to the shoulder and told Bell he was too intoxicated to drive. Bell had not driven Griffin's car before that night, but she got into the driver's seat and proceeded to drive toward her cousin's house.

At 3:15 a.m. a driver in the middle lane of the freeway observed a sedan pass on his right traveling 80 miles per hour.

---

[1]    Undesignated statutory references are to the Penal Code.

Several moments later the driver saw the passenger side of the sedan "clip" the rear driver's side of a semi-truck traveling much slower in the far right or slow lane.[2] The driver did not see the truck "make any swerving movements" before the sedan clipped it while attempting to change lanes.

The driver of the semi-truck was traveling approximately 50 miles per hour in the slow lane when his truck was hit from behind. The truck driver was not braking, changing lanes, or swerving. He saw the car that hit his truck spin in circles while moving forward and eventually stop in the carpool lane.

A third driver travelling 50 to 55 miles per hour while merging onto the freeway saw the sedan pass him at 80 to 85 miles per hour. Five minutes later the driver saw the sedan "really damaged" near the carpool lane.

A paramedic arrived at the scene shortly after the accident. The paramedic smelled alcohol while treating Bell in an ambulance, and Bell told him "they had been drinking, went to get some food, and were headed home." Bell also told the paramedic she was not driving the car, but the paramedic observed Griffin's body "half in, half out of the passenger's seat." A California Highway Patrol officer also responded to the scene and saw the lower half of Griffin's body still seat-belted into the car on the passenger's side and the upper half of his body on the pavement.

Bell was transported to a hospital where California Highway Patrol Officer Luis Murillo administered a horizontal gaze nystagmus test and observed Bell's eye jerk involuntarily,

---

[2] A semi-truck is a combination of a tractor and trailer. (*Truck Trailer Manufacturers Association, Inc v. Environmental Protection Agency* (D.C. Cir. 2021) 17 F.4th 1198, 1200.)

indicating intoxication.  Officer Murillo also observed Bell had red and watery eyes, and he detected a "strong odor" of alcohol on her breath.  Bell told Officer Murillo that she had two margaritas at approximately 10:30 p.m., she was not under the care of a doctor, she had not taken any medicine or drugs prior to driving, and she had not had any recent surgeries.  Officer Murillo noticed Bell slurred her words as she spoke.  Bell also told Officer Murillo that she was not driving the car at the time of the accident and that instead she was sitting in the back seat without her seat belt on.  Officer Murillo, however, observed a "distinctive mark of a seat belt" on Bell's left clavicle and bruising on her hip, which were consistent with Bell wearing a seat belt at the time of the accident.  Based on Officer Murillo's observations, he believed Bell was under the influence of alcohol.

Bell refused Officer Murillo's request to take a chemical test to determine the amount of alcohol in her blood.  Officer Murillo obtained a warrant to draw blood, and a nurse drew Bell's blood at approximately 8:00 a.m. the next morning. A Los Angeles County Sheriff's Department laboratory technician determined that, approximately five hours after the accident, Bell's blood alcohol concentration was 0.04 percent.

B.      *A Jury Convicts Bell of Gross Vehicular*
        *Manslaughter While Intoxicated*

The People charged Bell with gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)); driving under the influence of an alcoholic beverage and causing bodily injury to another person (§ 23153, subd. (a)); and driving with a blood alcohol content of 0.08 percent or more and causing bodily injury to another person (§ 23153, subd. (b)).  Regarding the latter two

4

counts, the People alleged Bell personally inflicted great bodily injury, within the meaning of section 12022.7, subdivision (a).

A jury found Bell guilty of gross vehicular manslaughter while intoxicated,[3] and the trial court sentenced Bell to the lower term of four years in prison, imposed various fees and assessments, and ordered Bell to pay restitution pursuant to a hearing. Bell timely appealed.

## DISCUSSION

Bell argues substantial evidence did not support the jury's verdict because the evidence did not show Bell acted with a conscious indifference to the consequences of driving under the influence of alcohol. Bell contends she acted with mere ordinary negligence, not gross negligence.

A. *Applicable Law and Standard of Review*

"Manslaughter is the unlawful killing of a human being without malice. [Citation.] A conviction of gross vehicular manslaughter requires: '(1) driving a vehicle while intoxicated; (2) when so driving, committing some unlawful act, such as a Vehicle Code offense with gross negligence, or committing with gross negligence an ordinarily lawful act which might produce death; and (3) as a proximate result of the unlawful act or the negligent act, another person was killed.'" (*People v. Batchelor* (2014) 229 Cal.App.4th 1102, 1109, disapproved on another ground in *People v. Hicks* (2017) 4 Cal.5th 203, 214, fn. 3; see *People v. Givan* (2015) 233 Cal.App.4th 335, 348-349; *People v. Diaz* (2013) 213 Cal.App.4th 743, 758.)

---

[3]     During trial the People dismissed the other two counts.

5

"'[G]ross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] "The state of mind of a person who acts with conscious indifferences to the consequences is simply, 'I don't care what happens.'" [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved.'" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1204 (*Ochoa*); see *People v. Bennett* (1991) 54 Cal.3d 1032, 1036; *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1171.) "In determining whether a reasonable person *in defendant's position* would have been aware of the risks, the jury should be given relevant facts as to what defendant knew, including his [or her] actual awareness of those risks. . . . [T]he defendant's *lack* of such awareness would not preclude a finding of gross negligence if a reasonable person would have been so aware. But the converse proposition does not logically follow, for if the evidence showed that defendant *actually appreciated the risks* involved in a given enterprise, *and nonetheless proceeded* with it, a finding of gross negligence (as opposed to simple negligence) would be appropriate whether or not a reasonable person in defendant's position would have recognized the risk." (*Ochoa*, at p. 1205; see *Bennett*, at p. 1038 [although the test for gross negligence is objective, "[t]he jury should . . . consider all relevant circumstances . . . to determine if the defendant acted with a conscious disregard of the consequences rather than with mere inadvertence"]; *People v. Givan, supra*, 233 Cal.App.4th at p. 346 ["a defendant's lack of awareness does not prevent a finding of gross negligence if a reasonable person would have been aware of the dangers presented"].)

6

"[G]ross negligence may be shown from *all* the relevant circumstances, including the manner in which the defendant operated his [or her] vehicle, the level of his [or her] intoxication, and any other relevant aspects of his [or her] conduct." (*Ochoa, supra*, 6 Cal.4th at p. 1207; see *People v. Givan, supra*, 233 Cal.App.4th at p. 349.) Gross negligence, however, "'cannot be shown by the *mere fact* of driving under the influence and violating the traffic laws.'" (*People v. Batchelor, supra*, 229 Cal.App.4th at p. 1109; see *People v. Hansen* (1992) 10 Cal.App.4th 1065, 1075 (*Hansen*) ["that a defendant drives a motor vehicle while under the influence of alcohol and violates a traffic law is insufficient to constitute gross negligence"]; *People v. Von Staden* (1987) 195 Cal.App.3d 1423, 1427 [same].)

"'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.'" (*Ochoa, supra*, 6 Cal.4th at p. 1206; accord, *People v. Morales* (2021) 69 Cal.App.5th 978, 988.) "'The conviction shall stand "unless it appears 'that upon

no hypothesis whatever is there sufficient substantial evidence to support [the conviction].""" (*People v. Suazo* (2023) 95 Cal.App.5th 681, 691; see *People v. Cravens* (2012) 53 Cal.4th 500, 508.)

B.    *Substantial Evidence Supported the Jury's Finding Bell Acted with Gross Negligence*

Bell's only argument is that substantial evidence did not support the jury's finding on the second element of gross vehicular manslaughter, namely, that she acted with gross negligence. The People introduced evidence showing Bell drove at least 15 miles per hour over the speed limit, passed cars on the right while speeding, had a blood alcohol content in the range of 0.12 to 0.18 percent at the time of the accident, and had received instruction on the dangers of driving under the influence of alcohol as part of her training as a train operator for the Metropolitan Transit Authority. This evidence, none of which Bell disputes, was sufficient to support the verdict. (See *People v. Givan*, *supra*, 233 Cal.App.4th at pp. 340-341 [substantial evidence supported a conviction for gross vehicular manslaughter where the defendant drove between 68 and 79 miles per hour in a 50-mile-per-hour zone, ran through a red light, and had a blood alcohol content of 0.17 percent one hour after the accident]; *People v. Batchelor*, *supra*, 229 Cal.App.4th at p. 1110 [substantial evidence supported a conviction for gross vehicular manslaughter where the defendant crashed into a tree after exceeding the speed limit by 10 to 17 miles per hour with a blood alcohol content of 0.13 percent to 0.24 percent and had attended a "first-time offender program that addressed the dangers of driving under the influence of alcohol"]; see also *People v.*

8

*Bennett, supra*, 54 Cal.3d at pp. 1034-1035 [jury could find gross negligence from evidence the defendant wove in and out of traffic, passed several cars on a blind curve, exceeded the speed limit by 10 miles per hour, lost control of his car at the bottom of a hill, and had a blood alcohol content of 0.20 percent two hours after the accident].)

Bell's blood alcohol content may have been lower than the blood alcohol content of the defendants in these cases, but she drove at least 15 miles per hour over the speed limit in the slow lane, had a blood alcohol content of 0.12 to 0.18 percent (50 to 125 percent over the legal limit), and was aware of the dangers of driving while under the influence of alcohol. This evidence was sufficient for a rational trier of fact to find Bell acted with a conscious indifference to the consequences of her actions.

Bell argues the evidence did not support a finding of gross negligence because she "did not believe that she was too impaired to drive," she "lost control of [Griffin's] muscle car" because she was unfamiliar with it, she had not suffered a prior conviction for driving under the influence or attend a course on alcohol awareness, and no one warned her not to drive that night because she was too intoxicated. Citing only evidence in her favor, however, does not meet Bell's burden to show substantial evidence did not support the jury's the verdict. (See *People v. Cardenas* (2015) 239 Cal.App.4th 220, 228 [defendant's argument the verdict was not supported by substantial evidence "misfocuse[d] on the evidence favorable to his position" and did not affirmatively demonstrate that the evidence supporting the verdict was insufficient]; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 [defendant cannot show a verdict lacked substantial evidence "by citing only his own evidence"].)

9

Where, as here, the evidence reasonably justified the jury's findings, "'a reviewing court's conclusion [that] the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.'" (*People v. Tran* (2022) 13 Cal.5th 1169, 1204; see *People v. Ramirez* (2022) 13 Cal.5th 997, 1118.)

Bell's reliance on *Ochoa*, *supra*, 6 Cal.4th 1199 and *Hansen*, *supra*, 10 Cal.App.4th 1065 is misplaced. In *Ochoa* the Supreme Court held the evidence showed "no 'mere' traffic violation while intoxicated" and supported a conviction for gross vehicular manslaughter. The evidence in that case was that the "defendant, (a) having suffered a prior conviction for driving under the influence of alcohol, (b) having been placed on probation, (c) having attended traffic school, including an alcohol-awareness class, and (d) being fully aware of the risks of such activity, nonetheless (e) drove while highly intoxicated, (f) at high, unsafe and illegal speeds, (g) weaving in and out of adjoining lanes, (h) making abrupt and dangerous lane changes (i) without signaling, and (j) without braking to avoid colliding with his victims' vehicle." (*Ochoa*, at pp. 1207-1208.) The Supreme Court held "the trier of fact could conclude from defendant's course of conduct and preexisting knowledge of the risks that he exercised so slight a degree of care as to exhibit a conscious indifference or 'I don't care attitude' concerning the ultimate consequences of his actions." (*Id.* at p. 1208.)

In *Hansen*, which did not involve whether substantial evidence supported the conviction, the issue was whether the defendant's failure to ensure his passengers were restrained by seat belts could constitute the "'commission of an unlawful act' or the 'commission of a lawful act which might produce death, in an

10

unlawful manner,' within the meaning of [section] 191.5, subdivision (a)." (*Hansen*, *supra*, 10 Cal.App.4th at p. 1078.) In that case, however, the jury convicted the defendant, who drove off a cliff killing one of two passengers in his car, of gross vehicular manslaughter where the defendant drove more than 40 miles per hour on curves "that should have been driven at 20 or 25 miles per hour," denied multiple requests from one passenger to pull over and let her out, and had a blood alcohol content of 0.20 percent several hours after the accident. (*Id.* at pp. 1069-1070.)

Contrary to Bell's suggestion, *Ochoa* and *Hansen* do not stand for the proposition the defendant, to be convicted of gross vehicular manslaughter, must have taken "an alcohol-awareness class," been previously convicted of driving under the influence, or been told not to drive. Such facts were relevant in those cases because they tended to show a person in the defendant's position would be aware of the risk of driving while impaired. (See, e.g., *Ochoa*, *supra*, 6 Cal.4th at p. 1208 [alcohol awareness class was relevant to the defendant's "preexisting knowledge" of the risks of driving under the influence of alcohol].) Here, the People presented evidence Bell had a similar awareness from her training as a train operator "on how dangerous it is to drive under the influence of alcohol," and Bell admitted she could not operate a train with a blood alcohol content of more than 0.04 percent. The jury could infer from this evidence Bell knew driving under the influence after only one or two drinks was dangerous. (See *People v. Tran*, *supra*, 13 Cal.5th at p. 1204 [reviewing court accepts the logical inferences a jury could draw from circumstantial evidence]; *People v. Miranda* (2021) 62 Cal.App.5th 162, 180 [same].) Indeed, the evidence arguably

11

showed Bell "actually appreciated the risks" involved in driving under the influence of alcohol "and nonetheless proceeded." (*Ochoa*, at p. 1205, italics omitted.)  Substantial evidence supported the jury's finding of gross negligence.

## DISPOSITION

The judgment is affirmed.

SEGAL, Acting P. J.

We concur:

MARTINEZ, J.

EVENSON, J.[*]

---

[*] Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.