[No. B215307. Second Dist., Div. Six. Aug. 23, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
HAL LEE MOORE, Defendant and Appellant.

938

**COUNSEL**

Landra E. Rosenthal, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Theresa A. Patterson and Elaine F. Tumonis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—Defendant driver races through city streets at excessive speeds. He runs a red light and collides with another car which in turn hits another car. The accident causes death to one victim and serious injury to another. These facts support a murder conviction based on implied malice even though the driver was not under the influence, and was not the object of a pursuit.

A jury convicted Hal Lee Moore of second degree murder (Pen. Code, §§ 189, 187, subd. (a)); vehicular manslaughter (Pen. Code, § 192, subd. (c)(1)); leaving the scene of an accident (Veh. Code, § 20001, subd. (a)); evading a peace officer (Veh. Code, § 2800.2, subd. (a)); two counts of reckless driving with bodily injury (Veh. Code, § 23104, subd. (a)); and resisting a peace officer (Pen. Code, § 148, subd. (a)(1)). He received a sentence of 15 years to life.

Moore contends the murder conviction is not supported by substantial evidence, and that the trial court erred in admitting evidence of a prior conviction for driving under the influence of alcohol. We affirm.

FACTS

On November 29, 2006, about 6:30 p.m., Moore was speeding through Pasadena in his Nissan Pathfinder (Pathfinder). He was angry because someone had burglarized his apartment while he attended his bachelor party in Mexico. He blamed his fiancée for not being at the apartment to take care of his things.

Moore was driving northbound on Hill Avenue. The speed limit on Hill Avenue is 35 miles per hour. Moore passed Annemarie Phillips at a high rate of speed. Phillips estimated his speed at 80 to 90 miles per hour. In passing Phillips, Moore crossed over into the southbound lane. Moore also passed Yolanda Chan. As he passed, he straddled the double yellow line. Cars heading southbound moved out of his way.

As Moore approached the intersection of Hill Avenue and Washington Boulevard, he checked his speedometer. He was going about 70 miles per hour. A white Toyota Corolla was crossing the intersection on Washington Boulevard. Moore saw the car, and noticed that the traffic signal for Hill Avenue was red. Moore did not try to stop because he was going too fast.

Moore's Pathfinder struck the Toyota, causing the Toyota to strike a black BMW waiting in the left turn lane. A passenger in the Toyota, Bertha Vasquez Arias, was killed. The driver of the BMW, Zaruhi Ovesepyan, suffered a broken arm.

Moore did not get out of his Pathfinder to check on the victims. Instead, he continued to drive north on Hill Avenue.

Pasadena Police Officer Victor Cass saw Moore's Pathfinder on Allen Avenue. It was traveling about 40 to 45 miles per hour in a 25-mile-per-hour zone. It had smoke or steam pouring from under its front end, and major front-end damage. Cass turned on his patrol car's lights and siren, and pursued Moore. Moore continued driving through intersections without stopping at stop signs. Multiple police cars arrived and followed Moore until he turned into the driveway of his residence.

When Moore got out of his car, Cass grabbed his arm. Moore attempted to pull his arm from the officer's grasp. Officers ordered him to stop resisting, but he did not comply. Eventually, three officers subdued him by taking him to the ground.

After waiving his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]), Moore agreed to talk with Officer Luis Marquez. Moore said he did not intend to kill anyone, that he did not experience any mechanical failure, and that he was simply going too fast. Marquez asked if he knew anyone was dead after the crash. Moore replied, "Yeah man. I cut them in half, dude. It's a wonder I survived." Marquez asked about leaving the scene of the accident. Moore replied, "Leaving the scene wasn't really the problem . . . . [T]hey were dead." When asked where he was going after the accident, Moore said he was "going to clean up, probably have a beer, sit down, sit at home and watch television." Asked why he resisted arrest, Moore replied, "I don't know. I just went wacky from Tobacky."

## DISCUSSION

### I

Moore contends his second degree murder conviction is not supported by substantial evidence.

In reviewing the sufficiency of the evidence we view the evidence in a light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316 [76 Cal.Rptr.2d 160, 91 Cal.Rptr.2d 160].) We have no power to reweigh the evidence or judge the credibility of witnesses. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790 [91 Cal.Rptr.2d 888].) We must affirm if we determine

that any rational trier of fact could find the elements of the crime or enhancement beyond a reasonable doubt. (*People v. Johnson, supra,* at p. 578.)

■ Murder is the unlawful killing of a human being with malice afore-thought. (Pen. Code, § 187, subd. (a).) Malice is implied when the circum-stances of the killing show it was done with an "abandoned and malignant heart." (Pen. Code, § 188.) Implied malice requires that the defendant act with a wanton disregard of the high probability of death. (*People v. Schmies* (1996) 44 Cal.App.4th 38, 45–46 [51 Cal.Rptr.2d 185]; *People v. Fuller* (1978) 86 Cal.App.3d 618, 628 [150 Cal.Rptr. 515].) The facts must demon-strate the defendant had a subjective awareness of the risk. (*People v. Watson* (1981) 30 Cal.3d 290, 298 [179 Cal.Rptr. 43, 637 P.2d 279].) It is not enough that a reasonable person would have been aware of the risk. (*Id.* at pp. 296–297.)

Moore concedes the evidence here is sufficient to support a finding of gross vehicular manslaughter. He claims, however, that the evidence is insufficient to show his actions went beyond the gross negligence necessary for man-slaughter, or that he had a subjective awareness of the risk.

■ Here Moore drove 70 miles per hour in a 35-mile-per-hour zone, crossed into the opposing traffic lane, caused oncoming drivers to avoid him, ran a red light and struck a car in the intersection without even attempting to apply his brakes. His actions went well beyond gross negligence. He acted with wanton disregard of the near certainty that someone would be killed.

Whether Moore was subjectively aware of the risk is best answered by the question: how could he not be? It takes no leap of logic for the jury to conclude that because anyone would be aware of the risk, Moore was aware of the risk.

Moore contrasts this case with other cases in which the court determined that a murder conviction based on implied malice is justified. He claims the other cases contain factors not found here.

In *People v. Watson,* the defendant had a blood-alcohol level of 0.23 percent, drove through a red light, narrowly avoiding a collision, then accelerated to more than 80 miles per hour, and collided with a vehicle in an intersection, killing two people. Moore points out that he was not under the influence of alcohol, and that he did not have a prior warning such as the near-miss provided in *Watson.*

In *People v. Fuller,* the defendant, while attempting to elude the police, drove down a city street at between 60 and 75 miles per hour, headed straight

at two oncoming police cars (only a last-minute maneuver by the police avoided a possible fatal collision between defendant and the officers), ran a red light and struck another car, killing the driver. Moore argues that, as in *Watson,* a prior near-miss gave the defendant a warning.

In *People v. Contreras* (1994) 26 Cal.App.4th 944 [31 Cal.Rptr.2d 757], the defendant had received numerous citations for traffic violations, had been arrested for reckless driving, had a prior accident, knew the brakes on his tow truck were not functioning properly, and was racing other tow truck drivers to the scene of an accident at the time of the fatal collision. Moore argues that the danger posed in *Contreras* was greater because he was driving a larger vehicle and was deliberately engaging in a speed contest. In addition, he had been cited or arrested for Vehicle Code violations 10 times in the previous nine months, and knew his brakes were defective.

■ It is true, the cases Moore relies on, particularly *People v. Contreras,* have factors not present here. But none of those cases hold that implied malice could not be found in the absence of those facts. The question of implied malice is to be decided in light of all the circumstances. (See *People v. Contreras, supra,* 26 Cal.App.4th at p. 955 ["[T]he absence of intoxication or high speed flight from pursuing officers does not preclude a finding of malice. These facts merely are circumstances to be considered in evaluating culpability"].) Here a properly instructed jury found implied malice. Under all the circumstances, the finding is reasonable.

## II

Moore contends the trial court erred in allowing his 2004 conviction for driving while intoxicated into evidence.

The prosecution claimed the conviction was evidence tending to show Moore's subjective knowledge of the risk created by his driving on the date of the fatality. The prosecutor argued that the class Moore was ordered to take pursuant to the conviction was sufficient to warn Moore of the risk. Moore objected that the evidence was not relevant, and that the evidence was more prejudicial than probative. (Evid. Code, § 352.) Moore pointed out that he was not under the influence of alcohol when the fatality occurred.

The trial court overruled Moore's objection. The court stated the prior conviction was sufficiently probative even without evidence of what might have been presented in the class Moore was ordered to take.

Monrovia Police Officer Heath Harvey testified that in September 2004, he was on patrol about 2:00 a.m. He noticed Moore standing outside a bar.

Moore was swaying back and forth. Harvey asked Moore if he was going to drive. Moore said, "no," that he was waiting for a taxi. Harvey warned him not to drive. About 15 minutes later, Harvey saw Moore driving. As Moore drove, he was weaving. Harvey arrested Moore for driving under the influence.

In *People v. Ortiz* (2003) 109 Cal.App.4th 104 [134 Cal.Rptr.2d 467], the defendant caused a vehicular homicide that resulted in his conviction for second degree murder. The defendant was driving at excessive speeds, and crossing a double yellow line to pass other vehicles. At one point, he crossed the double yellow line and collided head on with a car, killing two people. The parties stipulated that the defendant was not intoxicated at the time of the collision. The trial court admitted evidence of the defendant's prior drunk driving conviction over the defendant's objection that the evidence was irrelevant and should be excluded under Evidence Code section 352.

The Court of Appeal affirmed the trial court's ruling admitting the evidence. The court determined that the evidence was relevant to the question of intent, particularly the subjective knowledge necessary for implied malice. After reviewing the relevant case law, the court pointed out that the courts regularly admit prior instances of reckless driving on the question of intent. (*People v. Ortiz, supra*, 109 Cal.App.4th at pp. 113–115.) The court concluded: "A jury is entitled to infer that regardless of the mental state or condition that accompanies an instance of reckless driving—whether intoxication, rage, or willful irresponsibility—the driver's subsequent apprehension and prosecution for that conduct must impart a knowledge and understanding of the personal and social consequences of such behavior." (*Id.* at p. 115.)

We agree with *Ortiz*. The prior conviction is relevant regardless of the content of any class he was ordered to attend. The jury could reasonably conclude that his prior conviction put him on notice of the consequences of driving with extreme recklessness.

The next question is whether the trial court abused its discretion under Evidence Code section 352. Section 352 of the Evidence Code gives the court the discretion to exclude evidence if its probative value is substantially outweighed by undue prejudice. We review the trial court's ruling for abuse of that discretion. (*People v. Ortiz, supra*, 109 Cal.App.4th at p. 117.)

Driving under the influence is, unfortunately, a common offense. It is often committed by otherwise law-abiding people. Almost every adult has a friend or relative who has suffered such a conviction. Evidence of a prior drunk driving conviction pales in comparison to the evidence supporting the charged offense. (See *People v. Ortiz, supra*, 109 Cal.App.4th at p. 118.) That

is particularly true of Moore's callous statements to the police after he was apprehended. The trial court did not abuse its discretion in ruling the evidence admissible under Evidence Code section 352.

The judgment is affirmed.

Yegan, J., and Coffee, J., concurred.